UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

LORI G.,[1]

                Plaintiff,

        v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

                Defendant.

Case No.: 3:18-cv-00597-AC

OPINION AND
ORDER

---

JAIMIE M. EVANS
Evans & Evans PC
610 SW Broadway, Suite 405
Portland, OR 97205
        Of Attorney for Plaintiff,

BILLY J. WILLIAMS
United States Attorney
RENATA GOWIE
Assistant United States Attorney
District of Oregon
1000 SW Third Ave., Suite 600

MICHAEL HOWARD
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Ave., Suite 2900 M/S 221A
Seattle, WA 98104
        Of Attorney for Defendant

---

[1] In the interest of privacy, this opinion and order uses only the first name and the initial of the last name of the non-governmental party in this case.

**ACOSTA, Magistrate Judge:**

Lori G. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for disability insurance benefits ("DIB") under Title II and supplemental security income ("SSI") under Title XVI of the Social Security Act (the "Act"). This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c). (ECF No. 6.) Based on a careful review of the record, the Commissioner's decision is REVERSED and this case is REMANDED for further proceedings.

*Procedural Background*

Plaintiff applied for DIB on May 20, 2014, and SSI on October 20, 2014, alleging a disability onset date as of October 26, 2013. Tr. 17. Her applications were denied initially and upon reconsideration. (Tr. 88, 97, 108, 109.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and an administrative hearing was held on July 22, 2016. (Tr. 10, 43–87.) On March 17, 2017 an ALJ issued a decision finding Plaintiff not disabled within the meaning of the Act. (Tr. 17–27.) The Appeals Council denied Plaintiff's request for review on February 9, 2017, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–6.) This appeal followed.

*Factual Background*

Born in 1958, Plaintiff was 55 years old on the alleged onset date. (Tr. 89.) She has past relevant work as an office manager and medical secretary. (Tr. 22, 26.) Plaintiff alleged disability

based upon balance issues, memory issues, depression, panic attacks, anxiety, and shakiness. (Tr. 257.)

## Standard of Review

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [a court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. At step one, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, she is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment, she is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either individually or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, she is presumptively disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant can perform past relevant work, she is not disabled; if she cannot, the burden shifts to the Commissioner.

At step five, the Commissioner must establish the claimant can perform other work existing in significant numbers in the national or local economy. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(g), 416.920(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

### *ALJ's Decision*

The ALJ performed the sequential analysis, as noted above. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date and met the insurance requirements of the Act. (Tr. 19.) At step two, the ALJ determined Plaintiff had the following severe impairments: dysthymic disorder/depressive disorder and anxiety disorder. (*Id.*) At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (Tr. 20.)

The ALJ next determined Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following non-exertional limitations:

> She can perform simple, routine tasks defined as no greater than reasoning level 2; she is able to perform work that does not require public contact; she is able to have occasional, superficial contact with co-workers and occasional contact with supervisors.

(Tr. 22.) At step four, the ALJ determined that Plaintiff was unable to perform her past relevant work. (Tr. 25.) At step five, the ALJ found, based on the RFC and the vocational expert ("VE") testimony, a significant number of jobs existed in the national and local economy such that Plaintiff could sustain employment despite her impairments. (Tr. 26–27.) Specifically, the ALJ found Plaintiff could perform the jobs of "production assembler" and "assembler of electrical accessories I." (Tr. 27.)

*Discussion*

Plaintiff argues the ALJ erred by: (1) failing to provide clear and convincing reasons for rejecting her subjective symptom testimony; and (2) improperly rejecting the medical opinions of James Powell, Psy.D., and Jennifer Reffel, Psychiatric Mental Health Nurse Practitioner ("PMHNP"); and (3) failing to account for her moderate limitation in concentration, persistence, and pace in the RFC.

I.    Plaintiff's Subjective Symptom Testimony

Plaintiff contends the ALJ failed to provide clear and convincing reasons for rejecting her subjective symptom testimony. To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017); 20 C.F.R. §§ 404.1529, 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d

1104, 1112 (9th Cir. 2012); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage, absent affirmative evidence that the claimant is malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Carmickle v. Commissioner Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, and inconsistencies in testimony.[2] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2013); *Tommasetti*, 533 F.3d at 1039.

At the hearing, Plaintiff testified that she was "let go" from her last job as a patient coordinator for a dental office, in May 2013, for a "[l]ack of efficiency." (Tr. 54–55.) She testified that she was unable to work due to her depression, personality disorder, anxiety, and panic attacks. (Tr. 57.) She explained her depression caused weekly suicidal ideations, feelings of isolation and worthlessness, crying spells, and insomnia. (Tr. 57–58.); *see also* (Tr. 62 (explaining her insomnia prevents her from sleeping at night resulting in sleeping "from early morning to mid-afternoon").) Plaintiff testified her memory and concentration had diminished and that she difficulty finishing tasks. (Tr. 57, 72.) She also she described difficulties in reading comprehension and doing simple addition and subtraction. (Tr. 54.) Plaintiff testified that her anxiety manifests in the form of physically illness. (Tr. 62.) Finally, she explained that during panic attacks she experiences

---

[2] The court observes that on March 28, 2016, Social Security Ruling ("SSR") 16-3p became effective, and it eliminated the use of the term "credibility" and superseded SSR 96-7p.

dizziness, heart racing, and feels as if she cannot breathe, which sometimes causes her to vomit or lose control of her bowels. (Tr. 62.); *see also* (Tr. 72 (describing multiple panic attacks in grocery stores where Plaintiff had "leave [her] cart" behind).)

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical and other evidence in the record. (Tr. 23.) The ALJ offered two rationales for discounting Plaintiff's testimony: (1) the record showed "notable" inconsistencies; and (2) the longitudinal record reflected that Plaintiff had been "fairly stable" when taking medication.

*A. "Notable" inconsistencies*

The first inconsistency the ALJ found notable was Plaintiff's report in June 2014 that she had a "great childhood," but told providers in April and June 2015 that she had a "horrible mother" and did not have nurturing parents. (Tr. 23 (citing Tr. 435, 461, 486).) Nothing in the record connects Plaintiff's purported inconsistent statements about her upbringing to her subjective symptom testimony. *See* SSR 16-3p, *available at* 2017 WL 5180304 at *11 (explaining "adjudicators will not assess an individual's overall character or truthfulness", and mandating "[a]djudicators must limit their evaluation to the individual's statements about his or her symptoms and the evidence in the record that is relevant to the individual's impairments"); *see also Russell v. Berryhill*, 2018 WL 2948560, at *3 (W.D. Wash. June 13, 2018) (rejecting ALJ's reliance on a claimant's "inconsistent statement" to discount subjective symptom testimony) (citing SSR 16-3p)). Moreover, at the hearing, Plaintiff explained that the discrepancy stemmed from a breakthrough she had made in therapy, explaining she had "peeled back the layers and . . . realized [she] suffered from trauma" in her childhood. (Tr. 68.) The ALJ's first notable inconsistency was not a clear and convincing reason to reject her testimony.

Next, the ALJ noted that Plaintiff's report to a treating psychiatrist that she had a "low IQ score" was inconsistent with a "full scale IQ score of 92." (Tr. 23 (citing Tr. 438, 462, 588).) For two reasons, this was not a clear-and-convincing-reason to reject Plaintiff's subjective symptom testimony. First, assuming *arguendo* Plaintiff's self-report of having a "low IQ score" is inconsistent with a "full scale IQ score of 92," again there is nothing in the record that demonstrates how the inconsistency is "relevant to [Plaintiff's] impairments", as required by the relevant SSR. *See* SSR 16-3p, *available at* 2017 WL 5180304 at *11; *see also Russell*, 2018 WL 2948560, at *3. Second, the court is not persuaded the statement was inconsistent. In the relevant IQ testing, the doctor wrote that Plaintiff's "IQ Score of 92" placed her in the "30th percentile and this score would fall in the *lower* part of the Average range." (Tr. 438 (emphasis added).) The ALJ may not substitute her own opinion for that of a physician and thereby create an inconsistency; therefore, the ALJ's rationale was invalid. *See Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir 1975).

The ALJ next asserted that Plaintiff's treating psychiatrists "rated her as having marked limitations in her daily activities, but also report that [Plaintiff] was cooking and cleaning around a friend's house in exchange for her room there." (Tr. 23 (citing Tr. 462, 587).) An ALJ may use activities of daily living to discredit a claimant's testimony where the activities: (1) meet the threshold for transferable work skills, or (2) contradict the claimant's testimony. *Orn*, 495 F.3d at 639. A claimant, however, need not be utterly incapacitated to receive disability benefits, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity to be inconsistent with the claimant's alleged limitations to be relevant to his or her credibility).

\ \ \ \ \

The ALJ cited a treatment note that appeared in two separate places in the record, in which a provider documented that Plaintiff was "living with a male friend for whom she does work around the house and the cooking and the housecleaning." (Tr. 23 (citing Tr. 461, 587).) Plaintiff testified at the hearing that in exchange for a room, she functions as "house sitter" for a friend who comes home "[p]eriodically . . . on a weekend if he has a chance." (Tr. 52.) She testified that she attempts to do yardwork, but she explained that she frequently loses her balance and falls. (Tr. 50–53.) The ALJ does not explain and the court cannot discern how an isolated report of Plaintiff cooking and cleaning contradicts her testimony under *Orn*, especially given her testimony about her limited and unsuccessful attempts at yardwork.[3] Accordingly, this was not a clear and convincing reason for rejecting Plaintiff's subjective symptom testimony.

Finally, the ALJ noted that Plaintiff had "expressed frustration on multiple occasions at her inability to find a job[.]" (Tr. 23.) The Commissioner cites *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996), and asserts that Plaintiff's "expressed frustration at her inability to find a job, suggest[s] she felt able to look for work." Def.'s Br. 19. *Marci* upheld an ALJ's rejection of pain testimony — in conjunction with two other independent clear and convincing reasons — where the claimant "completed an electronics training course . . . and unsuccessfully sought work in the field." *Macri*, 93 F.3d at 544. The court finds *Marci* inapposite here. Unlike *Marci*, the record does not show that Plaintiff sought employment after the alleged onset date. Plaintiff's

---

[3] In a parenthetical, the Commissioner cites *Stubbs-Danielson v. Astrue* seemingly in support of the ALJ's implied invocation of daily activities. 539 F.3d 1169, 1175 (9th Cir. 2008). There, the Ninth Circuit concluded an ALJ's reliance on activities of daily living that included "cooking, house cleaning, doing laundry, and helping her husband in managing finances" was sufficient to reject a claimant's "mental and physical limitations." *Id.* at 1171–1175. Beyond citing the case, however, the Commissioner failed to supply specific argument and the court declines to construct one for her. *See Carmickle*, 533 F.3d at 1162 n.2 ("[I]ssues not argued with specificity in briefing will not be addressed.").

"frustration" regarding her inability to find a job *before* the alleged onset date, and "anxiety" regarding her finances *afterwards*, are not akin to the claimant's situation in *Marci*. Moreover, there is no indication Plaintiff had the ability to seek out or complete additional training, which the *Marci* court explicitly discussed. This was not a clear-and-convincing-reason to reject Plaintiff's testimony.

Finally, the Commissioner directs the court to "mild" objective clinical findings, seemingly asserting those records were inconsistent with Plaintiff's testimony. Def.'s Br. 18. The Commissioner then cites a number of treatment notes in support of the assertion. *Id.* Those treatment notes, however, were not cited by the ALJ in support of her assertion that Plaintiff's testimony was inconsistent with "mild" objective findings, and this court may not affirm an ALJ's decision based on *post hoc* rationalizations. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."); *see also Brown-Hunter*, 806 F.3d at 494 ("[O]ur decisions make clear that we may not take a general finding — an unspecified conflict between Claimant's testimony . . . and comb the administrative record to find specific conflicts.") (citation omitted)).

The "notable" inconsistencies highlighted by the ALJ were not clear and convincing reasons supported by substantial evidence to reject Plaintiff's testimony.

*B. Longitudinal Record*

The Commissioner asserts the ALJ properly rejected Plaintiff's testimony because the longitudinal record reflected that Plaintiff was fairly stable when taking her prescribed medications. As the Commissioner correctly notes, the "effectiveness . . . of any medication [a

claimant] takes" is an appropriate factor for ALJs to consider in evaluating subjective symptom testimony. 20 C.F.R. §§ 1529(c), 416.929(c) (effective June 13, 2011 through March 26, 2017).[4] *See also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (observing that "[i]mpairments that can be controlled effectively with medication are not disabling"). The Ninth Circuit, however, has repeatedly emphasized that reports of "improvement" in the context of mental health "must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms," explaining:

> Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances, it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working. *See, e.g., Holohan v. Massanari,* 246 F.3d 1195, 1205 (9th Cir. 2001) ("[The treating physician's] statements must be read in context of the overall diagnostic picture he draws. That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace.").

*Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). Moreover, such improvement "must also be interpreted with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace." *Id.*

The ALJ failed to consider the record in the context of the overall diagnostic picture. For example, the first treatment note the ALJ cited came from a May 2012 appointment — nearly a

---

[4] The court notes that effective March 27, 2017, the Commissioner has promulgated new regulations for evaluating subjective symptom testimony. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 FR 5844-01, *available at* 2017 WL 168819 at *5871, *5882 (January 18, 2017). Those revisions, however, do not apply in this appeal. *See Michael S. v. Berryhill*, No. 6:17-cv-01315-MC, 2019 WL 1062368, at *3 (D. Or. Mar. 6, 2019).

year and half before Plaintiff's alleged onset date — in which Plaintiff was reportedly "stable on her current regimen" of medications. (Tr. 23 (citing Tr. 403).) However, the ALJ's finding disregards records showing Plaintiff had a "[s]ignificant decline in functioning in 2013." (Tr. 503.) The ALJ also cited a July 2014 treatment note in which Plaintiff's mood had improved since "tapering BuSpar and starting Lamictal." (Tr. 23 (citing Tr. 413).) The same treatment note, however, explained Plaintiff "continue[d] to struggle with daily insomnia," and responded poorly to medication. (Tr. 413.) Moreover, by September 2014, Plaintiff presented with "increased anxiety" and the doctor noted that "over the past month," the improvement she had made on Lamictal had regressed. (Tr. 455.)

The ALJ also cited a series of treatment notes from 2016 in support of the conclusion that Plaintiff's symptoms were "stable" or had "improved." (Tr. 23 (citing Tr. 505, 514, 519, 523, 525).) The limited improvement Plaintiff experienced, however, does not necessarily mean she improved to the extent she that could "function effectively in a workplace." *Garrison*, 759 F.3d 1017. For example, although Plaintiff reported doing "better" dealing with people at one dialectical behavior therapy ("DBT") session, she also reported "spiraling" when alone. (Tr. 505.); *see also* (Tr. 617 (treating provider opining that Plaintiff would be "unable to attend anything regularly other than [her] weekly DBT group").) Indeed, two months prior to that session, Plaintiff reported to her treating provider that "she [was] having a hard time regulating her emotions" and that she was "crying all the time." (Tr. 518.)

Finally, Plaintiff argues this case is analogous to *Garrison* in that her diagnosis "'remained constant across all treatment records,' and the ALJ's reliance on periods of improvement failed to provide [a] clear and convincing rationale for rejecting" her testimony. Pl.'s Op. Br. 25 (quoting *Garrison*, 759 F.3d at 1018. Plaintiff's argument is well taken.

In sum, the ALJ failed to supply clear and convincing reasons to discount Plaintiff's testimony and is reversed as to this issue. *Garrison*, 759 F.3d at 1017.

II.     Medical Opinion Evidence

Plaintiff challenges the ALJ's weighing of the medical opinion evidence of record. In social security cases, there are three categories of medical opinions: those that come from treating, examining, and non-examining doctors. *Holohan*, 246 F.3d at 1201. "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.* at 1202. Opinions supported by explanations are given more authority than those that are not, as are opinions of specialists directly relating to their specialties. *Id.*

"If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *see also Reddick*, 157 F.3d at 725 ("[The] reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion."). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted).

A.      *Examining Psychologist: James B. Powell, Psy.D.*

Dr. Powell conducted a consultative psychological examination of Plaintiff in June 2014. (Tr. 432–50.) Dr. Powell opined, as relevant here, that Plaintiff's depressive and panic disorders were moderately severe and that she had marked limitations in activities of daily living as well as social functioning. (Tr. 443, 449.) The ALJ accepted Dr. Powell's conclusions that Plaintiff's

depressive and panic disorders were "at least of moderate severity." However, the ALJ rejected

the doctor's marked limitation in activities of daily living, finding they were "flatly contradicted

by [Plaintiff's] ability to prepare meals and perform household chores in exchange for room at a

friend's house, as well as her demonstrated level of functioning throughout the longitudinal

record." (Tr. 24.) Other than citing to the general exhibit of Dr. Powell's examination (5F), the

paragraph discussing the opinion does not include any additional citation to the record.[5] The ALJ

also rejected the marked limitations in social functioning, noting the limitation was "not supported

by the evidence previously discussed, or by his own examination of [Plaintiff]," and the doctor's

---

[5] The ALJ did not discuss Dr. Powell's assessment of a marked limitation in social functioning.
On a separate page of her decision, the ALJ gave "little weight" to the September 2014 opinion of
"James Blackwell." (Tr. 25.) Citing generally to the same exhibit (5F), the ALJ wrote that "Dr.
Blackwell" opined that Plaintiff had "marked limitations in social functioning and activities of
daily living," apparently erroneously attributing the limitations described by Dr. Powell to a "Dr.
Blackwell." (*Id.*) Notably, as Plaintiff aptly articulates:

> The entire Exhibit 5F is the evaluation of Dr. Powell, it is labeled as
> such in this record, and it was labeled as such in the exhibit list the
> ALJ appended to her decision. . . . . Exhibit 5F is comprised of Dr.
> Powell's detailed summary of his examination and testing on June
> 23, 2014, a 'Mental Residual Function Capacity Report' completed
> on Sept. 4, 2014, and a 'Rating of Impairment Severity Report'
> dated September 4, 2014.

Pl.'s Op. Br. 14. The Commissioner acknowledges the "September 2014 medical source statement
may have also been authored by Dr. James Powell," but asserts the ALJ sufficiently rejected the
non-existent opinion of "Dr. Blackwell.". Def.'s Br. 13–14; *but see* (Tr. 66 (ALJ acknowledging
Dr. Powell's opinion as exhibit 5F).) Accordingly, the court finds the ALJ's lack of discussion of
Dr. Powell's opined limitation in social functioning constitutes an independent error requiring
remand. *See Smolen v. Chater*, 80 F.3d 1273, 1286 (9th Cir. 1996) (ALJ committed legal error by
"effectively reject[ing]" medical opinion evidence by disregarding them without comment). The
court will nevertheless address the ALJ's rationale's for rejecting "Dr. Blackwell's" marked
limitation in social functioning in the context of evaluating whether the ALJ provided legally
sufficient reasons for rejecting Dr. Powell's opined limitations.

opinion that Plaintiff had suffered from "one or two" decompensation episodes was not supported by the record.

Inconsistency between a treating provider's opinion and a claimant's daily activities may constitute a specific and legitimate reason to discount that opinion. *Ghanim*, 763 F.3d 1162 (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600–02 (9th Cir. 1999)). Further, an ALJ may discredit a medical opinion that is incongruent to the physician's medical records. *Tommasetti*, 533 F.3d at 1041. However, to reject medical opinion evidence, an "ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors,' are correct." *Reddick*, 157 F.3d at 725 (citing *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988)).

The ALJ's reasoning fell short of that standard here. For example, Dr. Powell was fully aware of Plaintiff's limited domestic responsibilities in forming his opinion that Plaintiff had marked limitations in activities of daily living. In the "Summary and Conclusion" section of the doctor's report, he discussed at length Plaintiff's limited daily activities, but noted that Plaintiff was unable to complete them when she had "bad" days, which occurred at a minimum of twice per week. (Tr. 443.) For the ALJ to properly reject that limitation, she was required to "set forth [her] own interpretations and explain why [she], rather than [Dr. Powell was,] correct." *Reddick*, 157 F.3d at 725.

Similarly, the ALJ's assertion that the marked limitation in social functioning was not supported by the doctor's "own examination of [Plaintiff]" lacked adequate explanation in that the ALJ failed to articulate an incongruity between the opinion and the doctor's findings on examination. (Tr. 25.) Indeed, an independent review shows the limitation found ample support in the doctor's detailed and thorough "Summary and Conclusion" section discussed above. For

example, the doctor noted that in the year before the assessment, Plaintiff had increased "isolating herself" from others. (Tr. 444.); *see also* (Tr. 435 (noting Plaintiff stayed "away from friends and will 'duck down' in the car if she sees a friend").)

As for the alleged conflicts with the "longitudinal record" and "evidence previously discussed" in the ALJ's decision, such boilerplate rejections are insufficient to reject medical opinion evidence. *See Kennedy v. Comm'r of Soc. Sec.*, No. 6:17-cv-00988-HZ, 2018 WL 2724055, at *14 (D. Or. June 6, 2018) (explaining that an ALJ must explain what *specific evidence* undermines the rejection of medical opinion evidence). The lack of specificity alone is grounds for reversal. *See, e.g., id.*, at *14 (holding "unspecified inconsistencies with the record as a whole" was not a "specific, legitimate reason" to reject medical opinion); *Hill v. Berryhill*, No. 6:16-cv-02387-AA, 2018 WL 588998, at *4 (D. Or. Jan. 25, 2018) (concluding ALJ's failure "to cite the record or provide any specific evidence" in support of his assertions was not "not a permissible basis for rejecting a medical source opinion"); *Traglio v. Colvin*, No. 3:12-cv-01349-JE, 2013 WL 3809549, at *7 (D. Or. July 22, 2013) (ALJ's assertion that a medical opinion is "inconsistent with unspecified 'treatment records' and unidentified evidence in 'the record as a whole' is not specific enough to satisfy the less demanding standards that apply to contradicted opinions of a treating physician").[6]

---

[6] The same logic applies with equal force to the Commissioner's assertion that the opinion evidence that Plaintiff suffered between one and two episodes of decompensation was not supported by any of the longitudinal treatment records. Def.'s Br. 13–14. The Commissioner failed to provide support for such an assertion beyond citing Dr. Powell's opinion and the ALJ's decision, which itself — discussing a doctor who did not exist — failed to cite to the medical record at all. This was insufficiently specific to reject the opinion evidence concluding Plaintiff experienced between one and two episodes of decompensation.

In completing his nearly twenty-page psychological evaluation, Dr. Powell administered a battery of objective tests and provided thorough analysis and cogent conclusions. Although the ALJ was free to reject his opinion by providing specific and legitimate rationales, the ALJ failed to do so here. As such, the ALJ's rejection Dr. Powell's opinion is reversed.

*B. Jennifer Reffel, PMHNP*

Plaintiff asserts the ALJ improperly rejected the opinions of PMHNP Reffel. In effect at the time Plaintiff filed her claim, SSR 06-03p defined "acceptable medical sources" as licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech pathologists. SSR 06-03p, *available at* 2006 WL 2329939, at *1 (August 9, 2006).[7] Health care providers who are not "acceptable medical sources," such as nurse practitioners, physician's assistants, licensed clinical social workers or therapists are still considered "medical sources" under the regulations, and the ALJ can use such "other" medical source opinions in determining the "severity of [a claimant's] impairment(s) and how it affects [a claimant's] ability to work." 20 C.F.R. §§ 404.1513(d), 416.913(d) (effective September 3, 2013 to March 26, 2017).

An ALJ may not reject the competent testimony of "other" medical sources without comment. *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). To reject the competent testimony of an "other" source, the ALJ must provide germane reasons for doing so. *Molina*, 674

---

[7] For claims filed on or after March 27, 2017, the Commissioner has rescinded SSR 06-03p, broadened the definition of acceptable medical, and clarified that all medical sources, not just acceptable medical sources, can provide evidence that will be considered medial opinions. 20 C.F.R. §§ 404.1502, 416.902; 82 Fed. Reg. 5844-01, *available at* 2017 WL 168819, at *5863, *5873 (Jan. 18, 2017); *see also Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017) (as amended) (noting that the prior version of the "Social Security regulations provide an outdated view that consider a nurse practitioner as an 'other source'"). Those revisions, however, do not apply in this appeal. *See Michael S.*, 2019 WL 1062368, at *3.

F.3d at 1111. "Further, the reasons 'germane to each witness' must be specific." *Bruce*, 557 F.3d at 1115 (citing *Stout*, 454 F.3d at 1054 (explaining "the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony")). Examples of germane reasons for discounting evidence from an "other" source include: (1) reliance on properly discounted self-reports, *Lombard v. Colvin*, No. 6:13-cv-530-MC, 2015 WL 1477993, at *3 (D. Or. Mar. 31, 2015); (2) inconsistency with medical evidence, *see Bayliss*, 427 F.3d at 1218; or (3) inconsistency "with the claimant's activities," *Chappelle v. Berryhill*, No. 6:16-CV-00444-SB, 2017 WL 2399581, at *9 (D. Or. June 2, 2017) (citations omitted).

PMHNP Reffel treated Plaintiff throughout 2015 and 2016. *See* (Tr. 503, 518, 529, 540, 546, 558, 566.) In June 2016, the nurse completed a "Mental Impairments Questionnaire" supplied by Plaintiff's attorney. (Tr. 615–20.) PMHNP Reffel assessed Plaintiff had major depressive and anxiety disorder as well as borderline personality disorder, and assessed a current Global Assessment of Functioning[8] ("GAF") score of 70. (Tr. 615.) In response to a question as to whether Plaintiff had a "low I.Q. or reduced intellectual functioning," the nurse answered in the affirmative and explained her opinion was based on 2014 "neuropsych testing" that indicated

---

[8] The Ninth Circuit has noted that GAF scores are relevant to the disability assessment because they are "a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Garrison*, 759 F.3d at 1003 n.4. According to the Fourth Edition of the Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), a GAF between 61 and 70, such as Plaintiff's, indicates "some mild symptoms (e.g., depressed mood and mild insomnia) [or] some difficulty in social, occupational, or school function (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV at 32 (emphasis removed). However, the Ninth Circuit further noted that "GAF scores, standing alone, do not control determinations of whether a person's mental impairments rise to the level of a disability[.]" *Garrison*, 759 F.3d at 1003 n.4.; *see also Skelton v. Comm'r of Soc. Sec.*, No. 06:13-cv-01117–HZ, 2014 WL 4162536, at *11 (D. Or. Aug. 18, 2014) (explaining that the fifth and most recent edition of the DSM abandoned the GAF scale for several reasons, including "its lack of conceptual clarity" and "questionable psychometrics in routine practice").

Plaintiff had an IQ below 100. (Tr. 617.) The nurse further opined that because of her impairments Plaintiff would be "unable to attend anything regularly other than [her] weekly DBT group." (*Id.*) As relevant here, the nurse opined that Plaintiff had extreme limitations, which the Questionnaire defined as "no useful ability to function in this area," in maintaining attendance and being punctual, as well as completing a normal workday without interruptions from psychological symptoms. (Tr. 617–18.)

The ALJ gave PMHNP Reffel's opinion little weight for two reasons relevant to the court's analysis: (1) the nurse opined Plaintiff had a "low IQ," but testing demonstrated Plaintiff had a full-scale IQ of 92; and (2) the opined extreme limitations were inconsistent with Plaintiff's GAF score of 70. (Tr. 25.)

The ALJ's first reason is not supported by the record. As noted previously, Dr. Powell's testing revealed Plaintiff had a full-scale IQ score of 92, and the doctor specifically explained that such a score placed her in the "30th percentile and . . . would fall in the *lower* part of the Average range." (Tr. 438 (emphasis added).) Similarly, a review of PMHNP Reffel's opinion demonstrates that she understood a low IQ to be a score below 100. *See* (Tr. 617.) Again, the ALJ may not manufacture an inconsistency by creating a semantical distinction that effectively substitutes her own opinion for that of a medical professional, *see Day*, 522 F.2d at 1156, especially given that both medical professionals who opined on the matter thoroughly supported their conclusions that Plaintiff's IQ score was low.

The ALJ's second rationale, however, was sufficiently specific and germane to reject PMHNP Reffel's opinion. The ALJ reasoned that Plaintiff's "current" GAF score of 70 was inconsistent with the extreme limitations the nurse assessed. This inconsistency was a sufficiently specific and germane reason to give little weight to PMHNP Reffel's opinion. *See Bayliss*, 427

F.3d. at 1218. Plaintiff contends that the ALJ did not consider other evidence in the record, including varying GAF scores and performance on mental status exams that arguably support an alternative interpretation of the evidence. Pl.'s Op. Br. 16–17. However, when presented with conflicting evidence, the ALJ is responsible for "resolving conflicts in medical testimony, and for resolving ambiguities." *Garrison*, 759 F.3d at 1009 (citation omitted); *see also Batson*, 359 F.3d at 1193 (holding that variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record).

In sum, the ALJ supplied specific and germane reasons supported by substantial evidence for giving little weight to PMHNP Reffel's opinion. The ALJ is affirmed as to this issue.

## III.    RFC Formulation

Plaintiff contends that the RFC determination failed to account for the ALJ's finding of a moderate limitation regarding "concentration, persistence, or pace" at step three. Pl.'s Op. Br. 31; *see also* Tr. 21–22. Mental impairments are evaluated at steps two and three of the five-step sequential evaluation process, using the special psychiatric review technique. 20 C.F.R. §§ 404.1520a(a), 416.920a(a) (effective June 13, 2011 through January 16, 2017). Using that technique, the ALJ first rates the degree of functional limitation resulting from a claimant's impairments, then determines the severity of those impairments. 20 C.F.R. §§ 404.1520a(b), 416.920a(b). Functional limitations are determined by assessing the functional areas of: (1) daily living activities; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. §§ 404.1520a(c), 416.920a(c). After the functional limitations are determined, the ALJ determines if the severity of the impairment meets or equals a listed impairment. 20 C.F.R. §§ 404.1520a(d), 416.920a(d). If the impairment does not meet or equal a

listing, the ALJ must then assess the claimant's mental RFC.  20 C.F.R. §§ 404.1520a(e), 416.920a(e).

The ALJ found that Plaintiff had moderate difficulties in concentration, persistence, and pace at step thee.  (Tr. 21.)  This Court has previously addressed this issue and found that when an ALJ makes a finding of moderate limitations in concentration, persistence, or pace at step three, those limitations must be accounted for in the RFC assessment.  *Saucedo v. Colvin*, No. 6:12-cv-02289-AC, 2014 WL 4631225, at *17–18 (D. Or. Sept. 15, 2014) (failure to include limitations regarding concentration, persistence, or pace in the RFC is reversible error if the ALJ found such limitations at step three); *see also Lubin v. Comm'r Soc. Sec. Admin.*, 507 Fed. Appx. 709, 712 (9th Cir. 2013) ("The ALJ must include all restrictions in the [RFC] determination . . . including moderate limitations in concentration, persistence, or pace").  However, an "ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony."  *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008); *see also Brink v. Comm'r of the Soc. Sec. Admin.*, 343 Fed. Appx. 211, 212 (9th Cir. 2009) (holding that an "ALJ's findings must be consistent with the restrictions supported in the medical testimony").

In *Stubbs-Danielson,* the claimant's physician found she had "slow pace, both in thinking & actions," but concluded she was able to "carryout simple tasks" nonetheless.  *Id.* at 1173.  The ALJ then incorporated the limitations into a restriction of "simple tasks" in the RFC.  *Id.* at 1174.  On appeal, the claimant argued that the limitations in the RFC did not fully incorporate the claimant's limitations in pace as described by the medical evidence.  The Ninth Circuit disagreed and found that the ALJ's RFC adequately considered the physician's findings and "translated" the

claimant's restrictions regarding concentration, persistence, or pace "into the only concrete restrictions available to him . . . [the] restriction to 'simple tasks.'" *Id.*

Plaintiff argues that, unlike the medical evidence relied upon in *Stubbs-Danielson*, "no medical expert translated Plaintiff's moderate limitations in concentration, persistence or pace into a functional capacity to perform 'simple, routine tasks.'" Pl.'s Br. 32. The Commissioner asserts that "the opinions to which the ALJ gave some weight support her assessment of Plaintiff's limitations." Def.'s Br. 17. The Commissioner then lists evidence the ALJ arguably *could have* cited to support translating Plaintiff's limitations in concentration, persistence, or pace into a "simple, routine tasks" limitation. That reasoning, however, was not articulated by the ALJ in her decision, and therefore is not a proper basis to affirm the ALJ. *See Bray*, 554 F.3d at 1225; *see also Connett v. Barnhart,* 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts."). In other words, the ALJ's decision did not "identify" a concrete restriction from a medical provider the ALJ translated into a specific RFC limitation as required by *Stubbs-Danielson* and the Commissioner may not supply one *post hoc.*

Accordingly, as the ALJ found that Plaintiff had a moderate limitation regarding "concentration, persistence, or pace" at step three, she was required to account for that limitation in Plaintiff's RFC. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163–65 (9th Cir. 2001) (limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE). By failing to incorporate all of Plaintiff's limitations into the RFC and, by extension, the dispositive hypothetical question posed to the VE, the ALJ's conclusion lacks evidentiary support. *Robbins*, 466 F.3d at 886; *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) ("If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the expert's testimony has no evidentiary value to support a

finding that the claimant can perform jobs in the national economy.") (internal citation omitted).
This case must therefore be remanded.

IV.    Remedy

When a court determines the Commissioner erred in some respect in making a decision to deny benefits, the court may affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for a rehearing." *Treichler v. Commissioner*, 775 F.3d 1090, 1099 (9th Cir. 2014) (quoting 42 U.S.C. § 405(g)).   In determining whether to remand for further proceedings or immediate payment of benefits, the Ninth Circuit employs the "credit-as-true" standard when the following requisites are met: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, (2) the record has been fully developed and further proceedings would serve no useful purpose, and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the Plaintiff disabled on remand. *Garrison*, 759 F.3d at 1020.   Even if all of the requisites are met, however, the court may still remand for further proceedings, "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" *Id.* at 1021.

Here, the first element of the credit-as-true standard is satisfied, as the ALJ failed to supply a clear-and-convincing rationale to discredit Plaintiff's testimony, erred in failing to provide legally sufficient reasons for rejecting the opinion of Dr. Powell, and failed to account for Plaintiff's moderate limitation in concentration, persistence, and pace in the RFC. However, the Court finds further proceedings would be useful.   As the Ninth Circuit has explained, the "touchstone for an award of benefits is the existence of a disability" rather than an ALJ's error. *Brown-Hunter*, 806 F.3d at 495 (citations omitted).  Although the ALJ provided legally insufficient reasons to reject evidence, the overarching errors with the ALJ's analysis stemmed from a lack of

specificity with her reasoning, not necessarily a lack of evidence in the record. *See Sandford M. v. Comm'r, Soc. Sec. Admin.*, No. 6:17-cv-0571-AC, 2018 WL 6817048, at *7 (D. Or. Oct. 17, 2018) (remanding a step two of the credit-as-true analysis because "the ALJ's errors stemmed from a lack of specificity with her reasoning, not a lack of available contrasting evidence in the record"), *adopted*, 2018 WL 6816994 (D. Or. Dec. 26, 2018). On remand, the ALJ should examine the record and either accept Plaintiff's testimony and the medical opinion evidence or supply legally sufficient reasons for their rejection. If on remand the ALJ again rejects Plaintiff's testimony or the medical opinion evidence, she should cite *specific* evidence in the record for doing so.

### Conclusion

The Commissioner's decision denying Plaintiff's applications for SSI and DIB is REVERSED and this case is REMANDED for further proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED this _13th_ day of September, 2019.

JOHN V. ACOSTA
United States Magistrate Judge